## Bacon *against* Arthur.

The erection of a dam in a navigable stream, pursuant to the act of the 23d of March 1803, which causes the formation of an obstruction in the stream below, subjects him who erected or maintains it, to any damage which such obstruction may occasion to a navigator. This, not because of a misconstruction of the dam, but of the obstruction which it occasions.

ERROR to the common pleas of *Warren* county.

This was an action on the case by Horace Bacon and Richard Hiller against Robert Arthur, Oliver Parker and Alpheus Hawley. The defendants erected a dam in the Conewango creek, (a public highway) in pursuance of the act of the 23d of March 1803. The consequence of which was, that a bar was formed in the bed of the stream below, which obstructed the navigation, and upon which the boats, rafts, &c. of the plaintiffs had been wrecked, and for which they claimed damages in this suit.

The court below instructed the jury that the plaintiffs could not recover if the bar had been necessarily occasioned by a rightly constructed dam, but if it had been occasioned by a misconstructed or carelessly constructed dam, the plaintiffs were entitled to recover. This was the subject of the only error assigned. Verdict for defendants.

*Struthers* and *Pearson*, for plaintiff in error.

Under the provisions of the act of assembly of the 23d of March 1803, the owner of the dam is answerable for all the consequences of any obstructions in the navigation of the stream occasioned by the dam. The right to erect mill-dams is an immunity, granted upon the express condition " that such person or persons, his or their heirs and assigns, in erecting the said dam or dams, or keeping them in repair, *shall not obstruct or impede the navigation of such stream.*" This privilege is not to be enlarged by construction for the benefit of the owner of a milldam and to the prejudice of third persons and the public. But by the construction put upon the act by the court below, the person

[Bacon v. Arthur.]

who erects his dam skilfully may obstruct the navigation to any degree, and shall not be answerable. All dams occasion bars below. Unless therefore some one is bound to remove them, the navigation may be totally destroyed. Who then shall be at the expense of removing them? The public cannot be called upon for that purpose. It is certainly not reasonable to require it of the navigator or the person who wishes to transport his produce or lumber upon the stream : such requisition would take away his privilege upon it as a public highway. No one then can be holden but the owner of the dam, the man who reaps the benefits of the erection which occasions the obstruction; and he, we conceive, is bound to keep the channel clear or pay the damages which are consequential, whether his dam is well and scientifically, or badly and injudiciously constructed; and he is liable, although other causes, equally probable, may be assigned for the formation of the bars, if his dam affords a sufficient reason to account for such formation.

*Thompson* and *M'Calmont*, for defendants in error.

The opinion of the Court was delivered by

ROGERS, J.—This is an action on the case, to recover damages for an injury sustained by the plaintiff by the erection of a mill-dam on the Conewango river. It is averred in the declaration that the dam so obstructs the navigation of the stream, and changes the natural flow of its water, that certain mounds and bars are thrown up and created, by which the natural channel is obstructed, &c. On the trial a variety of evidence was given, which it is immaterial particularly to recapitulate. It is assumed in the charge that the plaintiff suffered great damage by the rafts striking and jamming on the bars, a short distance below the defendant's mill-dam. There was proof also that the bars were caused by the dam.

The court among other things charged the jury that they should be satisfied with reasonable certainty that the injury sustained was caused by the wrong construction of the dam. That the act of assembly authorising the erection of dams on streams declared to be public highways, does not require that those building such dams should keep the stream navigable below, provided they are erected in a proper and judicious manner. The cause was made to turn on the point, whether the dam was scientifically erected, or otherwise; for if it was, the jury was instructed that if they should believe that such bars are the necessary and inevitable effect of such erections, the plaintiff could not recover. As the act authorises the erection of dams, say the court, and every dam must necessarily cause a bar below, the defendants are not liable, unless for the misconstruction of their dam. The above abstract contains the substance of the charge, and of this the plaintiff complains.

The act to which the court refers, is the act of the 23d of March 1803, entitled "an act to authorise any person or persons owning lands

[Bacon v. Arthur.]

adjoining navigable streams of water declared public highways, to erect dams upon such streams for mills and other water works."

The first section declares that all and every person owning lands adjoining any navigable stream of water declared by law a public highway, except the rivers Delaware, Lehigh and Schuylkill, are hereby authorised to erect a dam or dams, for a mill or mills, or other water works, upon any such stream of water adjoining their own lands, and to keep the same in good repair, and also to lead off thereby, on his or their own land, so much of the water of such stream as may be necessary for his or their mill or mills, or other water ; *provided, that the said person or persons, his or their heirs and assigns, in erecting the said dam or dams, or keeping them in repair, shall not obstruct or impede the navigation of such stream, or prevent the fish from passing up the same.* The second section directs the manner of proceeding, on complaint made that a dam obstructs the navigation or impedes the progress of fish ; and the third and last section gives a remedy to the owner or owners of any raft, boat, or other vessel, &c. obstructed, suffering damage, or being delayed on their passage, &c. on said streams, or highways, &c., with the proviso that the damage so to be recovered does not exceed the sum of fifty dollars ; but if damages shall be alleged to a greater amount than fifty dollars, the same may be sued for and recovered in the court of common pleas of the county where the said damages shall have been sustained.

The plaintiff alleges in his declaration that he has sustained damages to the amount of 2000 dollars, and for this injury he has brought suit, in accordance with the clause of the act above recited, in the court of common pleas of Warren county, where the damages were sustained.

The correctness of the charge depends on the construction of the first section of the act, and particularly the proviso.

It cannot be denied that the legislature have full and plenary authority on the subject matter to regulate the navigation, and prescribe the mode and manner of using the bed of the river ; and that the erection of a mill-dam on the streams declared to be public highways without their license, would be a public nuisance. Assuming this jurisdiction, and believing that such erections would be a public benefit, the legislature have granted the privilege to owners to erect dams for mills or other water works adjoining their own lands, with the necessary restriction, however, that the same be done in such a manner as not to interfere with a much more important public interest, namely, the free and uninterrupted navigation of the stream, or with the private rights of other owners. The rights, which are common to all the citizens of this state and of an adjoining state, have been guarded with the utmost solicitude, and even in language which, it appears to me, it would be difficult to make more precise and clear. Dams are authorized to be built only on the condition that they do not obstruct and impede the navigation of the stream, or prevent the passage of fish. It is the basis of the charge that

[Bacon v. Arthur.]

had the dam not been built, the bars or flats which caused the injury would not have been formed.    Granting this to be the case, it comes, I apprehend, within the spirit as well as the letter of the prohibition contained in the proviso.    If indeed the proviso should be taken literally (such is the care which the legislature have taken, I presume, of the streams for public use), the owners cannot avail themselves of the permission at all, as it is evident all dams must cause some impediment to the navigation ; but as the construction would be contrary to the grant itself, the proviso must receive a more liberal construction, taking special care to preserve the great interests of the commonwealth.    However, where the injury arises from a bar which is the immediate effect of a dam erected in the bed of the river, I cannot bring myself to doubt but that it is such an obstruction of the navigation as was in the view of the legislature, and is embraced in the proviso of the act.    It is true that injuries may arise which would be so remote as to give no cause of action; but this would be so whether the dam was well or ill constructed ; as for example the breaking of a dam by a flood, which may cause an injury to property a great distance below the site of the dam, and in others which may be readily imagined, some of which were put by the counsel for the defendant in error.    The case of the Lehigh Bridge Company *v.* the Lehigh Coal and Navigation Company, 4 *Rawle* 24, was cited.    It was there held that when mischief is done by an act of providence, as a flood in a stream, the defendant must be guilty of negligence to fix him with liability.    The injury complained of arose from the sluice left in the dam, and an unusually high freshet, caused by heavy rains, which produced an extraordinary flood of water through it, in consequence of which the bridge of the plaintiff was undermined and washed away.    The court were of opinion on these facts that the defendant was chargeable with no want of attention to the probable effects of the sluice; he was not answerable for consequences which it was impossible to foresee and prevent.    That it was for the jury to inquire whether the defendant used all proper precautions to prevent consequential injury.    But that is very unlike this case ; for no extraordinary freshet or flood is alleged, but the bars, it is admitted, were erected by gradual accretions caused by the defendant's dam, of which he must have known, and which he could have easily removed.

It has been before shown that the legislature cannot justly be charged with a want of attention to the interest of the public.    It is plain that no authority to build dams of this description would have been granted if it could have been foreseen that the effects would have been produced which this case exhibits; or, if such consequences had been predicted, it is altogether probable it would have been made the express duty of the owner immediately to have removed the impediments.    The impossibility of divining all the consequences was, no doubt, the reason which induced the legislature to couch the proviso in such general terms, which well may have

[Bacon v. Arthur.]

been supposed by them to include any obstruction erected, either when the dam was being erected, or after its completion. No person can suppose that the legislature could intend to tolerate dams, where, in time, without attention, they would totally destroy the navigation. They therefore must have intended that bars, which, it appears, are the necessary consequence of all dams, should be removed by some person. It would be unjust to throw the expense on those who navigate the river, some of whom live in an adjoining state. Nor can I perceive any reason why the neighbours, or the township, should be burthened with it. The work must, therefore, be done either by the commonwealth or the owner of the dam; and as it would be an unreasonable construction to throw it on the former, it must be borne by the latter, or be left undone, which will surely not be pretended. At the commencement of such bars they may be easily removed. It is only when they are suffered to accumulate, that they become difficult. The owner must be aware when they commence—the public may or may not be. Giving the act therefore a reasonable construction, I cannot come to any other conclusion than that it is the duty of the owner to remove the obstruction caused by the dam, and that he is answerable for all damages, which may be occasioned by a neglect to perform this duty.

Judgment reversed, and a *venire de novo* awarded.