## Ensworth *et al. versus* Commonwealth.

1. Any unauthorized obstruction in a navigable stream is a nuisance; but a dam authorized by the "Mill-Dam Act" of 1803, although an obstruction is not a nuisance.

2. The proviso in the act that such dams "shall not obstruct or impede the navigation" must receive a liberal construction; a *literal* construction would be contrary to the grant itself.

3. The obstruction spoken of in the act is, in reference to public rights, a substantial impediment partially destroying the use of the stream for navigable purposes.

4. The act embraces streams navigable at common law, as well as those declared navigable by Acts of Assembly, except the rivers Lehigh, Schuylkill and Delaware.

5. In an indictment under the Mill-Dam Act, it was found by special verdict that the defendants had been indicted under the act, for erecting a dam in the West Branch of the Susquehanna, and convicted; and that the supervisors by order of court removed the obstruction by altering the dam, and so returned to the court; and that the dam so altered is the same dam for maintaining which the defendants are indicted, and is in the same condition in which it was made by the supervisors. *Held,* that the first indictment and the proceedings under it were a protection to the defendants.

6. The purpose of the act is not to abate the dam, but to make it conform to the statutory license.

7. The alteration of the dam is committed exclusively to the supervisors as agents of the Commonwealth, to be done according to their own judgment without the aid of the court or jury, and without review of their decision.

8. The private rights of navigators are secured by the Act of May 31st 1841, § 7.

ERROR to the Court of Quarter Sessions of *Lycoming county.*

This was a prosecution against Ensworth, Taylor & Brown, for maintaining a mill-dam in the West Branch of the Susquehanna, contrary to the provisions of the Mill-Dam Act of March 23d 1803.

On the 24th of April 1864, E. B. England petitioned the Court of Quarter Sessions, alleging that the defendants maintained a mill-dam contrary to the provisions of the act.

Viewers were appointed, who reported that the defendants did so maintain a dam. An indictment of two counts, one for nuisance under the act and the other for nuisance at common law, was found by the grand jury, and the jury found a special verdict that the defendants have kept and maintained a mill-dam in, across and upon the West Branch of the river Susquehanna, extending from lands of the defendants, adjoining the said river and across the said river from shore to shore, for certain mills, &c., and that the keeping and maintaining of the said dam is convenient and useful for the purposes of the said mills; that the said mill-dam obstructed and impeded the navigation of the said river, which was and still is a public highway, and one of the great rivers of Pennsylvania; that no dam can be constructed across the said river at or near where the dam aforesaid is maintained and kept by the defendants, without impeding the navigation of the said river; that at the

[Ensworth v. Commonwealth.]

August Sessions 1860, of the Court of Quarter Sessions of the said county of Lycoming, one Isaac Gould presented his petition to the said court, setting forth that Loren A. Ensworth, Benjamin H. Taylor, James V. Brown and others, maintained a dam in the said West Branch of the river Susquehanna, &c., and that such proceedings were had in the said court that an indictment was found against the said Ensworth, Taylor, Brown and others charging them with a nuisance in erecting, building, setting up, maintaining and repairing the said dam. And afterwards a jury, on the 24th day of August 1861, found the said Ensworth, Taylor and Brown guilty in the manner and form as indicted. And on the 30th day of August, in the year last aforesaid, the court ordered the supervisors to remove the obstruction mentioned and described in the said bill of indictment in such a manner as to bring the same within the provisions of the Act of Assembly passed the 23d day of March 1803, at the cost of the said Ensworth, Taylor and Brown; that an order, in pursuance of the said sentence of the said court, was delivered to the said supervisors; that the said supervisors afterwards raised the said dam several inches in height, made the schute narrower than it was before the order was delivered to them, and raised the sheeting of the schute higher than it had been before; that the said supervisors made return to the court that they had removed the obstructions mentioned and described in the indictment; that on the 18th day of August 1862, the court granted a rule upon the supervisors to show cause why an attachment should not issue against them for contempt in refusing obedience to the aforesaid order, and that on the 27th day of January 1863, the court discharged the said rule; that the said milldam so altered and fixed by the said supervisors is the same milldam which the said Ensworth, Taylor and Brown have kept and maintained; that they have kept and maintained it at the same height and in the same condition substantially as it was made by the supervisors as aforesaid. And that the said Ensworth, Taylor and Brown are not guilty of building, erecting or setting up the said mill-dam, but whether upon the whole matter, by the jurors aforesaid in form aforesaid found, they the said Ensworth, Taylor and Brown acted contrary to law in keeping and maintaining the said mill-dam from the said 30th day of April, A. D. 1864, to the present time, across the said West Branch of the river Susquehanna, from shore to shore, and therefore impeding and obstructing the navigation of the said river and public highway, the said jurors aforesaid are ignorant, and therefore they pray the advice of the court, and if, upon the whole matter aforesaid, by the jurors aforesaid in form aforesaid found, it shall appear to the court that the said Ensworth, Taylor and Brown acted contrary to law in keeping and maintaining the said mill-dam and thereby impeding and obstructing the navigation of the said West Branch

2 P. F. SMITH—21

[Ensworth *v.* Commonwealth.]

of the river Susquehanna, to the common nuisance of the citizens of this Commonwealth, passing along and navigating the said river, they find them guilty in manner and form as they stand indicted, but if upon the whole matter by the jurors· found, it shall appear to the court that they, the said Ensworth,. Taylor and Brown did not act contrary to law in keeping and maintaining the said mill-dam as aforesaid, then the jurors say, that the said Ensworth, Taylor and Brown are not guilty, and that the costs of the prosecution be paid by defendants.

The court entered judgment on the special verdict for the Commonwealth, which was the error assigned.

*H. C. Parsons* and *J. & W. H. Armstrong,* for plaintiff in error.—The Act of 1803 was a license to owners adjoining the great rivers to erect dams for their mills. The action of the supervisors under the original complaint cannot be disturbed: Alexander *v.* Stokely, 7 S. & R. 301.

· The legislature contemplated some kind of obstruction in authorizing mill-dams, and when the remedy provided was carried out it is final, and individual wants should give way to the good of the whole community : Bacon *v.* Arthur, 4 Watts 440.

*G. White* and *R. P. Allen,* for defendant in error.—In Pennsylvania the navigation of our rivers has been carefully guarded : Dugan *v.* Bridge Co., 3 Casey 310 ; Commonwealth *v.* Church, 1 Barr 105 ; Bacon *v.* Arthur, *supra.* The Act of 1803 relates to the smaller streams " declared by law public highways," not to the great rivers of the state. It is an unreasonable construction of the act to give supervisors the final determination of the subject ; they must act under the direction of the court.

The opinion of the court was delivered, May 24th 1866, by
STRONG, J.—The jury have found that the dam, as maintained by the defendants below, now plaintiffs in error, is an obstruction to the navigation of the river, but they have not found that it is a nuisance. Whether it is or not is the very question presented by the special verdict. Though an obstruction to navigation, if the dam is authorized by law it is no nuisance, and the defendants are not indictable for maintaining it.

Without the license granted by the Act of March 23d 1803, commonly called the " Mill-dam Act," there could be no doubt that the maintenance of the dam would be contrary to law. Any unauthorized obstruction in a navigable stream is a nuisance. But by that act certain dams in such streams are permitted. True, there is a proviso to the grant of the privilege to erect and maintain them, that they shall not obstruct or impede the

[Ensworth v. Commonwealth.]

navigation of the stream. Of this it was said, in Bacon v. Arthur, 4 Watts 437, that it must receive a liberal construction, taking special care to preserve the great interests of the Commonwealth, because a literal construction would make it contrary to the grant itself, all dams causing some impediment to the navigation; and this is evidently correct. The Act of Assembly must be so construed that it shall mean something; and clearly the legislature intended to authorize the erection and maintenance of some dams. But if the proviso is construed literally, either it or the grant must yield, and the rule is that a proviso or exception contrary to a grant is void. Both, however, may stand, if the proviso be construed reasonably in connection with the authority given, as it was manifestly understood by the legislature. A dam is not then unauthorized by the Act of 1803, merely because it is, in some sense, an obstruction. It may be difficult to define precisely the extent of the limitation imposed upon the grant. It would seem, however, that the obstruction spoken of is a substantial impediment, not merely making navigation more difficult, but partially destroying the power of using the stream for navigable purposes. I speak of it now solely in view of its infringement upon public rights. Whether an individual sustaining a private injury peculiar to himself may recover compensation for the injury in a suit at law, is another question not necessary to be decided in this case. Here the defendants are accused of a public wrong. During the argument it was contended that the Mill-Dam Act does not apply to dams in such streams as were navigable at common law, but only to those declared navigable by Act of Assembly, and that the West Branch of the Susquehanna was not one of them, and hence that is not within the provisions of the act. To this we do not assent. The river Susquehanna, from the Maryland line up to Northumberland, and thence up both its branches meeting at that place, through the whole length of the river, was declared to be a public highway by an Act of Assembly passed March 31st 1785. And the Act of 1803 embraces within its provisions any navigable stream declared by law to be a public highway, except the rivers Delaware, Lehigh and Schuylkill. The exception itself is very significant. There can be no doubt, therefore, that the Mill-Dam Act does authorize dams in the West Branch of the Susquehanna as in other streams not excepted.

The material inquiry in this case then is, whether the defendants are protected by that act? The special verdict finds that they are owners of land adjoining both sides of the river, that the dam has been constructed from their lands on one side to their lands on the other, that it was erected prior to the 30th of April 1864, that the defendants were indicted for erecting it in 1860, and that they were convicted and sentenced to pay a fine

and the costs. The verdict also finds that the indictment in 1860 was a proceeding under the 2d section of the Mill-Dam Act, and that the court after the conviction ordered the supervisors of the townships in which the lands lie to remove the obstruction described in the indictment in such a manner as to bring the same (that is, the dam) within the provisions of the Act of Assembly of 1803, at the costs of the defendants. The verdict further finds that the supervisors made alterations in the dam, describes what they were, and finds that they returned to the court that they had removed the obstruction described in the indictment. Still further, the verdict finds that the dam so altered and fixed by the supervisors is the dam which the defendants have maintained from April 30th 1864 at the same height, and in the same condition substantially in which it was made by the supervisors. Is the maintenance of such a dam illegal—an offence for which the defendants can be indicted and punished? It is plain they are not liable to indictment at common law. The Act of Assembly has provided a remedy for transgression of the power granted by it, and that remedy is exclusive of all others. It permits nothing to be done according to the course of the common law: Brown *v.* The Commonwealth, 3 S. & R. 273; Cresswell *v.* Clugh, 3 Watts 330; and Spigelmoyer *v.* Walter, 3 W. & S. 540.

The 2d section enacts that on complaint made to the Court of Quarter Sessions of the proper county that any dam built under the act obstructs navigation, the court shall appoint commissioners to view and compare it with the provisions of the act, and to report at the next sessions, whereupon, if it shall appear that an offence against the act has been committed, a bill of indictment shall be sent to the grand jury. And it is further enacted that if the accused be convicted of the offence, he shall be liable to pay a fine and damages to the complainant such as may be found by the jury, and the court is required to direct the supervisors of the adjoining townships forthwith to remove every such artificial obstruction in such manner as to bring the same within the limitations and provisions of the act at the cost of the person so convicted.

This is a very peculiar regulation. The offence, for the redress of which it is provided, is not the erection or maintenance of the dam itself. The violation of law to be removed and punished is the excess beyond the allowed limit. And the manifest purpose of the act is not to cause the dam to be abated, but to make it conform to the statutory license. The mode in which this is accomplished is also peculiar. The act takes the reduction or alteration of the dam entirely out of the hands of the person convicted of transgression, and commits it to agents of the Commonwealth, for such the supervisors are. They are public officers designated for this particular duty, and the duty is plainly pre-

[Ensworth *v.* Commonwealth.]

scribed. They are "to remove the obstruction in such a manner as to bring the same within the limitations and provisions of the act." In so doing they must exercise their judgment. Neither the judgment of the court, nor that of the jury, are invoked by the law to determine the manner in which the obstruction is to be reduced within the limits allowed by the 1st section of the act. All that is settled by the verdict of the jury, and the judgment of the court, is that the licensee exceeded his license. How much, in what particular, and what must be done to remove the excess, are questions committed to the supervisors, without any provision for a review of their decision. With their discretion and with their action certainly the convicted person cannot interfere. And when their action has been completed, and the dam has been conformed to their judgment of what the act allows, an alteration of it afterwards by any person, unless the alteration be entire removal, would be unwarranted, for it would be interference with the action of the Commonwealth. Under the law the supervisors are more than executive officers of the court. The sheriff would suffice to carry into effect a sentence to abate the dam. But they have discretionary and executive duties to perform. They must determine what are the limitations and provisions of the act, what is the extent of the license it grants, and they must make the dam conform to it. It would be strange, indeed, if their judgment and their action could be revised collaterally by successive juries. If it can be, a jury becomes the final judge of conformity to the provisions of the law instead of the persons designated by the Commonwealth for that duty.

The Act of Assembly clearly contemplates but one prosecution, the result of which is to be the removal of all that is transgression of the statutory license. We shall mistake if we assimilate it to an indictment at common law for a nuisance. In such an indictment, the defendant, if convicted, is adjudged to abate the nuisance. The Commonwealth does not undertake to do it. If, therefore, it be not abated, or only partially removed, he may be again indicted for continuing it. He is in fault. Not so under the Act of 1803, when he must take the dam as it is left by the supervisors. And it is obvious that the mode in which they secure conformity to the provisions of the act is not material. It is not to be doubted that navigation may be improved or restored, if obstructed by a dam, in many ways. It may be done by raising the dam and altering the sluice or water-way in the channel of the stream. The Act of Assembly has left to the supervisors the choice of the mode as well as the extent to which the necessary alterations must be made. Regarding then these officers as the chosen agents of the Commonwealth, endowed with power to reform the dam and bring it within its authorized limits, it must be that as against the Commonwealth their action determines that

[Ensworth *v.* Commonwealth.]

the dam as reformed by them is not illegal, and that it is no longer an obstruction within the meaning of the 1st section of the act, therefore not a public nuisance. If this is not so, these defendants are guilty of an offence committed not by themselves, but by the public that complains of it, an offence they had no power to prevent.

It was urged in the argument that this construction of the powers and duties of the supervisors enables them practically to close the navigation of rivers without responsibility to the law. To this it may be answered that the public rights are abundantly protected. For any neglect or corrupt action of the supervisors they are amenable to the criminal law, and for their misconduct or mistake there is a remedy in the power of the legislature to revoke, at any time, in whole or in part, the license granted. The private rights of every navigator are secured by the provisions of the Act of Assembly of May 31st 1841, Pamph. L. 416.

We hold therefore that the former indictment and the proceedings thereunder are a protection to these defendants; that the dam as it stood on the 30th of April 1864, and as it has been since maintained by the defendants, is not illegal, and hence that there was error in giving judgment for the Commonwealth on the special verdict.

> The judgment of the Court of Quarter Sessions is reversed, and judgment is now entered for the defendants. But the jury having found that the defendants pay the costs of prosecution, the record is remitted with instructions that they be sentenced accordingly, as directed by the Act of Assembly.