IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT NOVEMBER TERM, 1870.

THE STEPHENS AND CONDIT TRANSPORTATION COMPANY
v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY.

1. The charter of the Central Railroad Company required them to con-
struct a suitable bridge over any navigable water that they might
cross, and required that such bridge should be "located at a point
convenient for navigation."

*Held*—That in the absence of any allegation of the want of care or good
faith in the selection of the location of such bridge, the company were
not liable at the suit of a party who complained of damage from an
alleged mislocation of such bridge.

2. Such charter further required that such bridge should be constructed
"with a pivot draw with two openings, each of seventy-five feet in
width, at right angles to the main channel.

*Held*—That an averment in a declaration in the following. words, *viz.*,
"and although they did construct said bridge with two openings
therein, yet they did locate said openings in said draw in a manner
not at right angles to the main channel," did not show any breach of
duty, inasmuch as the openings referred to might have exceeded in
width those mentioned in the charter.

On demurrer to declaration.

280

Argued at the June Term, 1870, before BEASLEY, CHIEF JUSTICE, and BEDLE, WOODHULL, and SCUDDER, Justices.

For plaintiffs, *T. Runyon.*

For defendants, *Williamson* and *Frelinghuysen.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This case comes before us on a demurrer to the declaration. The theory of the action is, that the defendants have located and erected their bridge over Newark bay in a mode unwarranted by their charter. In substance, the declaration states the statutory authority under which the structure was put up. In the charter of the defendants, which is a public act, it is expressed in these words, *viz.,* "that the said railroad company shall construct a suitable bridge over any navigable water that they may cross, with a pivot draw with two openings, each of seventy-five feet in width, at right angles to the main channel, located at a point convenient for navigation." The wrong which the plaintiffs allege that the defendants committed in the exercise of this authority is thus set forth by the pleader: "They did not and would not locate said bridge at a point or place in or across Newark bay, convenient for the navigation of said Newark bay, and did not and would not construct said bridge with a pivot draw, with two openings of seventy-five feet each in width, at right angles to the main channel of said Newark bay, but, on the contrary thereof, they then and there did locate said bridge at a point or place in or across said Newark bay, inconvenient for navigation, and the same has ever since then remained so located; and although they did construct said bridge with a pivot draw with two openings therein, yet they did locate said openings in said draw in a manner not at right angles to the main channel of said Newark bay there, and the same have so ever since then remained." The particular damage of the plain-

tiffs arising from this alleged misplacement and misconstruction of the bridge is then stated.

It thus appears that the plaintiffs' complaint of the conduct of the defendants is two-fold, the first being that the bridge of the railroad company is placed at a point inconvenient for navigation.

But is this a question which can be tested in the method of a suit between these parties? In the solution of this point there are two considerations which are indispensable. First, it must be remembered that the defendants have been authorized by the public authority to erect the bridge in question; and, second, that there is no charge that the defendants, in locating such bridge, have, from design, injured navigation. As no want of care or skill is imputed to them, the legal inference must be that they have acted in good faith, and have erred only in judgment. On the assumption, then, that these defendants have, without neglect on their part, in the exercise of the trust reposed in them, failed to ascertain the true locality on this bay for their bridge, in strict conformity to the provision of their charter, will an action lie by an individual who has sustained a peculiar loss from such mistake? This depends on the intention of the legislature. How was the point of location, in the view of the law-makers to be settled? Was it to rest in the fair and honest judgment of the defendants, or was it to be left as an open question, to be mooted as often as individuals, believing the bridge to be inconveniently located, might see fit to put the matter in agitation? It does not seem to me reasonable to conclude that it was the legislative design to leave this subject forever in a state of uncertainty. It was obvious, from the beginning, that opinions might differ as to what point, for a bridge, would be convenient with reference to the navigation of that water. In making a selection, it would, of necessity, be unavoidable to compare different locations, and to estimate, with judgment, the various advantages and disadvantages of each, and thus, in view of all the circumstances, to choose the one which appeared preferable

with respect to the public convenience. This, manifestly, was a function requiring critical judgment and nice discretion—and this function was confided to the defendants. They were to locate their bridge not at a designated, fixed point, but at such a point as, in the exercise of a skillful and honest judgment, appeared convenient to the rights of the community in the water. The privileges granted were, first, the right to select the location of the bridge, and, second, the right to build it, and, in the absence of a willful abuse, the execution of such right cannot result in a nuisance. Whether the bridge has been so placed as not to obstruct unnecessarily the navigation of the bay, is a question to be settled between the state and the company; if the state is satisfied, the individual citizen cannot complain. Any other view of the affair would surrender it to endless litigation. The defendants in locating and erecting their bridge, have done nothing which their charter does not authorize, and, consequently, in my opinion, cannot, in this particular, be regarded as wrongdoers.

In the case of *Clarke* v. *Birmingham and Pittsburg Bridge Company*, 5 *Wright* 147, the Supreme Court of Pennsylvania gave a similar effect to the power conferred upon a corporation by its charter. The suit was for an alleged error in the location of the piers of the bridge of the defendants. In the well-considered opinion of Judge Strong, the impropriety of permitting such a question to be litigated *inter partes* is strongly set forth. He says: "Now, the right given by the defendants' charter to erect a bridge and construct piers necessarily included a right to fix the number and location of the piers. The legislature did not define where they should be placed. They left it to the discretion of the company. It may be conceded that this discretion could not be wantonly abused to the injury of the public, or of any private person. For a wanton abuse of it, resulting in an immediate injury to an individual, a private action might be maintainable." "But, to hold the grantee of a franchise to erect a bridge, responsible for damages resulting

from a mistake of judgment in locating the piers, to treat such mistake as of course culpable negligence, is to take away from the grantee that discretion which the legislature has conferred, and transfer it to a jury. Such is not the doctrine of the cases referred to. To hold it, would be submitting to the jury to find what would be the best location, or rather what would not be the best, instead of leaving the decision of that question where the law has put it. And it would lead to this remarkable consequence: one jury might find that the second pier, upon which the plaintiffs' boat was wrecked, is injudiciously and unskillfully located, without determining where it should have been, and repeated suits by the same plaintiffs might compel its removal. Another jury might find it located in the right place, and a location in any other would enforce the defendants to liability for damages. Can this be? Is legislative authority of no more avail than this? Is a question of engineering to be submitted to a jury every time a boat may happen to impinge on a pier? And is the discretion which the legislature committed to the directors of a bridge company to be *reviewed* and controlled every time by a new jury?" I have quoted thus largely from the foregoing opinion, as well on account of the sound sense and forcible presentation of the views expressed, as from the close application of these views to the present case. The doctrine of this case was subsequently approved of and stated "to be the settled law of the state of Pennsylvania," in the *Monongahela Bridge Company* v. *Kirk*, 10 *Wright* 130.

The plaintiffs' action cannot be founded on the alleged mislocation of the bridge of the defendants, as stated in the declaration.

The second alleged misfeasance of the defendants, relied on by the plaintiffs, relates to the requirement contained in their charter to have in the bridge "a pivot draw with two openings, each of seventy-five feet in width, at right angles to the main channel."

This duty, unlike the selection of a location for the bridge

is of a definite and fixed character, and does not appear to be, in any wise, a matter resting in judgment or discretion. The size of the openings are given, and their relative direction with reference to the channel of the river. The defendants have accepted their charter subject to this burthen. A failure to comply with the obligation thus assumed, would appear to be a willful neglect, for the consequences of which, if immediately injurious to an individual, an action will lie. There are a number of the Pennsylvania decisions which properly hold these companies to a strict responsibility for the non-performance of all the engagements, both express and implied, arising from their charters. *Dugan* v. *Monongahela Bridge Company*, 3 *Casey* 310; *Bacon* v. *Arthur*, 4 *Watts* 437; *Plumer* v. *Alexander*, 2 *Jones* 81. I think if the bridge of the defendants has not a pivot draw with two openings, each of seventy-five feet in width, at right angles to the main channel, and that in consequence of the non-existence of such openings the plaintiffs have sustained a particular damage, such circumstances would form a legal foundation for an action. But it seems to me that these circumstances are not set forth with the requisite certainty, in this declaration. The affirmative allegation of misconduct in the defendants, in this particular, is couched in these terms: "And although they did construct said bridge with a pivot draw, with two openings therein, yet they did locate said openings in said draw in a manner not at right angles to the main channel of said Newark bay there, and the same have so ever since then remained." Now, this averment is defective in this respect: it does not show the width of these openings, which it is said are not at right angles with the channel. The charge is, that the defendants have made two openings in their bridge, which are not in the proper relative direction; this may be true, and yet the defendants may be guiltless of any breach of duty. They are under no obligation to have two indefinite openings in their bridge, at right angles to the channel. What is required of them are two openings, placed as directed, each of seventy-five feet in width. Sup-

pose the pivot draw provides two openings of one hundred feet each, it is obvious that seventy-five feet of each of these one hundred feet may be at right angles with the channel, and the residue of each hundred feet may run in a relatively different direction. An allegation, therefore, that two openings of undisclosed width are not at right angles with the channel, does not show, with certainty, that two openings of the prescribed width in the proper direction do not exist in this bridge of the defendants.

The result is, that on neither ground stated in this declaration is it shown that the defendants have violated any duty devolved upon them by their charter, and the demurrer, consequently, must be sustained.

CITED in *Easton and McMahon* v. *N. Y. and Long Branch R. R. Co.*, 9 C. E. Gr. 54.